## J. UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

BARN LIGHT ELECTRIC COMPANY, LLC
a Florida limited liability company,

      Plaintiff,                              Case No.

vs.

COCOWEB.COM Inc., a Delaware corporation,
and, Jennifer Brey an individual
California resident,

      Defendants.
_____/

## COMPLAINT

Plaintiff, Barn Light Electric Company, LLC, ("Barn Light Electric"), sues Defendants, Cocoweb.com Inc. ("Cocoweb") and Jennifer Brey (collectively, the "Defendants") and alleges as follows:

## INTRODUCTION

1.    This is an action for trademark infringement and unfair competition in violation of the laws of the United States and the state of Florida. Barn Light Electric seeks a permanent injunction, damages, including Defendants' profits, trebled under the law, punitive damages, and other relief more fully described herein.

2.    In 2008, Bryan Scott founded Barn Light Electric in his backyard barn. The initial focus of the business was identifying and meticulously restoring

vintage light fixtures to their former beauty.  Mr. Scott spent countless hours refining his techniques until ultimately he was able to design and manufacture original, vintage-inspired goods that have not been available since the early to mid 1900s.

3.     Mr. Scott and Mrs. Donna Scott promoted Barn Light Electric's vintage-inspired products through an original website, www.barnlightelectric.com.  This site was coupled with a creative and winsome social media campaign, which gave Barn Light Electric a substantial Internet presence.  Over time, Barn Light Electric grew into a tremendously successful lighting company dedicated to providing high-quality fixtures and home goods with a strong emphasis on American craftsmanship.

4.     During its entire existence, Barn Light Electric has designed, manufactured and sold light fixtures and other products under its BARN LIGHT ELECTRIC CO. family of trademarks.  By virtue of years of extensively using and promoting its trademarks, Barn Light Electric established enormous goodwill in its marks, a number of which are incontestable as a matter of law.

5.     Defendants are engaged in a number of bad faith acts with one purpose: misappropriation of Barn Light Electric's business and goodwill.  These acts include the use of marks identical or confusingly similar to BARN LIGHT ELECTRIC and GOODRICH, deliberate use of online advertising as "Barn Light

Electric," "Barn Light," and "Goodyear Lights" to sell RLM products in direct competition with Barn Light Electric.

6.      By engaging in at least such acts, the Defendants, either alone or collectively, have willfully engaged in various forms of unfair competition, including infringing Barn Light Electric's trademarks and otherwise capitalizing on its goodwill in the marketplace.

7.      Defendants' unlawful activities are causing a likelihood of consumer confusion.

8.      Defendants' willful infringement and unfair competition has harmed consumers and irreparably damaged the goodwill associated with Barn Light Electric's common law and federally registered trademarks.

9.      Barn Light Electric respectfully requests that this Court enter a judgment of infringement and unfair competition against Defendants, enter permanent injunctive relief, and issue an award of damages, including Defendants' profits, trebled under the law, punitive damages, attorneys' fees and costs associated with this action, and other just and proper relief.

## PARTIES, JURISDICTION, AND VENUE

10.      This Court has subject matter jurisdiction pursuant to: 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121 because Barn Light Electric's trademark

70203037;1

infringement and unfair competition claims arise under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.

11. This Court has supplemental jurisdiction over the Florida law claims under 28 U.S.C. §§ 1367 and 1338(b).

12. Venue is proper pursuant to 28 U.S.C. § 1391(c) because Barn Light Electric resides in this Judicial District and Defendants advertise and sell their infringing products within this district.

13. Plaintiff Barn Light Electric is a limited liability company organized and existing under the laws of Florida with its principal place of business in the Middle District of Florida.

14. Upon information and belief, Cocoweb is a corporation organized and existing under the laws of Delaware, with its principal place of business in California.

15. The exercise of general personal jurisdiction over Cocoweb is proper because, upon information and belief, as a result of its advertising, marketing and sales of products in Florida, Cocoweb has engaged in at least more than *de minimis* total sales in Florida compared to sales to other states. Cocoweb presently represents that it counts Florida cities and resorts as its customers, including at least the city of Destin, Florida and Faro Blanco Resort & Yacht Club in the Florida

Keys.  Moreover, Cocoweb presently operates a trade account program extending to design professionals, resellers and/or drop shippers residing in Florida.

16.     Additionally, the exercise of specific personal jurisdiction over Cocoweb is proper pursuant to, *inter alia*, Florida's long-arm statute, section 48.193 (1) and (2), Florida Statutes (2000).  Cocoweb is subject to this Court's personal jurisdiction at least by: operating a highly-interactive, commercial web store (www.cocoweb.com) that promotes, offers for sale and actually sells products under the infringing marks BARN LIGHT ELECTRIC, BARN LIGHT, OLDAGE BARN LIGHT and GOODYEAR to consumers in this judicial district; engaging in unlawful business transactions with consumers in this judicial district; contracting with consumers in this judicial district in connection with the sale of products under such infringing marks; shipping products sold under such infringing marks to consumers in this state and judicial district; engaging in other acts of unfair competition described herein that harm consumers and Barn Light Electric in this judicial district; receiving revenue from Florida residents in connection with the sale of goods with infringing marks; and directing advertising and marketing efforts for its services and products to the State of Florida.

17.     Upon information and belief, Defendant Brey is a resident of California.  The exercise of personal jurisdiction over Defendant Brey is proper pursuant to *inter alia*, Florida's long-arm statute, section 48.193 (1) and (2), Florida

Statutes (2000).  Defendant Brey is subject to this Court's jurisdiction at least by directing and controlling the infringing activities of Cocoweb that are detailed herein.   Upon information and belief, Defendant Brey has directed and/or controlled Cocoweb's operating a highly-interactive, commercial web store (www.cocoweb.com) that promotes, offers for sale and actually sells products under the infringing marks BARN LIGHT ELECTRIC, BARN LIGHT, OLDAGE BARN LIGHT and GOODYEAR to consumers in this judicial district; engaging in unlawful business transactions with consumers in this judicial district; contracting with consumers in this judicial district in connection with the sale of products under such infringing marks; shipping products sold under such infringing marks to consumers in this state and judicial district; engaging in other acts of unfair competition described herein that harm consumers and Barn Light Electric in this judicial district; receiving revenue from Florida residents in connection with the sale of goods with infringing marks; and directing advertising and marketing efforts for its services and products to the State of Florida.

## BARN LIGHT ELECTRIC COMPANY

18.    Since its inception, Barn Light Electric has been a pioneer in the manufacture, distribution and sale in interstate commerce of high-quality, vintage-inspired lighting and other home products.

19.     Like many successful businesses, Barn Light Electric had modest beginnings.  Barn Light Electric has its origins in a barn behind founder Mr. Scott's home.   In that barn, Mr. Scott dedicated years to avidly hand-restoring and rebuilding beautiful, American-crafted light fixtures.  Eventually, that experience inspired Mr. Scott to coin the term BARN LIGHT, and adopt the trademarks BARN LIGHT ELECTRIC and BARN LIGHT ELECTRIC CO.

20.     Many of the lights Mr. Scott restored—commonly known in the lighting industry as "RLM Lights"—were used in warehouses, factories and other structures dating from the 1930s to the 1950s.  He especially enjoyed restoring such light fixtures because of the high-quality craftsmanship that went into their manufacture.

21.     Together, Mr. and Mrs. Scott would search antique stores, attend estate sales, and even search abandoned buildings looking for vintage light fixtures to restore.  After restoring them, Mr. Scott sold many of the light fixtures and kept others for his personal use.

22.     Eventually, Mr. Scott's experience and passion for restoring antique light fixtures led him to start designing and hand-crafting new light fixtures.  In doing so, he researched and implemented techniques and materials from a bygone era, when light fixtures were made to last for generations.

23.     Mr. Scott used highest-quality, commercial grade materials in Barn Light Electric's light fixtures.

24.     Demand for Barn Light Electric's light fixtures swelled to the point where it constituted a sustainable business that required full time attention.

25.     Accordingly, in 2008, the Scotts left their professional careers to manage Barn Light Electric full time.

26.     The aesthetic beauty and craftsmanship consumers associate with Barn Light Electric's current products is manifest, as illustrated below in Figure 1 (Barn Light Electric's Goodrich® Gooseneck Union LED light); Figure 2 (Ivanhoe® Seaside Radial Wave Reflector porcelain pendant light); and Figure 3 (The Original™ LED Pendant).



**FIGURE 1**

70203037;1



**FIGURE 2**



**FIGURE 3**

27.    In addition, Barn Light Electric has also manufactured, distributed and sold various vintage-inspired home goods, as well as restored antiques.  For

example, Figure 4 illustrates porcelain enamel dinnerware set made by Barn Light Electric.



**FIGURE 4**

**BARN LIGHT ELECTRIC'S MARKETING EFFORTS**

28.     Barn Light Electric has experienced stunning growth and success from its earliest days.   Such growth and success were especially remarkable considering it was during one of the darkest recessionary periods in United States history and in a competitive, hard-hit industry.

29.     Barn Light Electric's success is not simply a matter of the craftmanship, creativity and hard work, much of its success is a direct result of Barn Light Electric's brilliant marketing to its consumers.

30.    Barn Light Electric has invested millions of dollars and countless hours engaging, inspiring, educating and charming its customers.

31.    Barn Light Electric created and is always improving on its website www.barnlightelectric.com.  A few minutes spent there reveals a great deal about Barn Light Electric and exceptional quality of its products.  It also beckons users to stroll through countless design ideas that incorporate Barn Light Electric's products.

32.    Barn Light Electric also invests time in marketing its products through a plethora of social networking websites.  These include, for example, Instagram, Pinterest, www.houzz.com and Facebook.  At such sites, Barn Light Electric inspires consumers with new ways to incorporate Barn Light Electric's products into their homes.  Barn Light Electric also uses such websites to educate consumers who may have questions about specific projects.

33.    These efforts have led to a substantial following on Barn Light Electric's social media sites.  Barn Light Electric enjoys a following in the thousands and innumerable "likes."

34.    Over the years, Barn Light Electric's all-American success story has garnered significant amounts of national media attention in virtually every form of modern media, including television, radio, print and Internet.  See Exhibit 1 (a

listing of national media sources that have used BARN LIGHT ELECTRIC as source identifier for Barn Light Electric's goods and services).

35.    Barn Light Electric's unique products, marketing investments, and nationwide media have led to a wellspring of goodwill in the BARN LIGHT ELECTRIC trademarks.

## THE BARN LIGHT ELECTRIC MARKS

36.    Since at least 2008, Barn Light Electric has continuously used in commerce the marks BARN LIGHT ELECTRIC®, BARN LIGHT ELECTRIC COMPANY®, and HOME OF "THE ORIGINAL BARN LIGHT."  For more than a decade, Barn Light Electric has also used the marks GOODRICH® and GOODRICH LIGHTING EQUIPMENT®.  Together, the marks identified in this paragraph are referred to as "the BARN LIGHT ELECTRIC marks."

37.    By virtue of years of extensively using and promoting the BARN LIGHT ELECTRIC marks, Barn Light Electric has established enormous goodwill in these marks.  The BARN LIGHT ELECTRIC marks are well-known and uniquely associated with Barn Light Electric in the minds of consumers through the United States.

38.    Accordingly, the BARN LIGHT ELECTRIC marks are entitled to common law trademark protection.

39.     In addition to its exclusive common law rights in the BARN ELECTRIC marks, Barn Light Electric owns numerous federal registrations for the BARN LIGHT ELECTRIC marks, including U.S. Trademark Reg. Nos. 5,298,953 and 5,707,278 (for BARN LIGHT ELECTRIC COMPANY®); 4,703,116, 4,703,117 and  4,703,118, 4,722,667, (for BARN LIGHT ELECTRIC®); 4,144,384 (for GOODRICH®); and 4,148,010 and 5,707,634 (for GOODRICH LIGHTING EQUIPMENT®).  A true and correct copy of the BARN LIGHT ELECTRIC marks registration certificates is provided as Exhibit 2.

40.     U.S. Trademark Reg. No. 5,707,278 covers the following trademark:



41.     At least each of Barn Light Electric's U.S. Reg. Nos. 5,298,953, 4,703,116, 4,703,117 and  4,703,118, 4,722,667 is incontestable pursuant to 15 U.S. Code § 1065.

42.     The BARN LIGHT ELECTRIC marks, when used in connection with Barn Light Electric's products and services, are distinctive and, through Barn Light

Electric's extensive sales, advertising and promotional efforts, have acquired secondary meaning.

43.    As a result of Barn Light Electric's activities, the BARN LIGHT ELECTRIC marks have become valuable assets of Barn Light Electric, represent enormous good will of the company, and identify and distinguish Barn Light Electric's goods and services from those of others.

## COCOWEB AND BREY ENGAGE IN TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

44.    On information and belief, Defendant Brey and Defendant Cocoweb are aware of Barn Light Electric Company.

45.    Indeed, on information and belief, Defendants are aware of Barn Light Electric's trademark rights in the BARN LIGHT ELECTRIC marks.

46.    Defendants devised a scheme to sell Cocoweb light fixtures by trading off of the goodwill that Barn Light Electric has established in the BARN LIGHT ELECTRIC marks.

47.    Under Defendant Brey's direction and control, Cocoweb adopted the infringing marks BARN LIGHT ELECTRIC, BARN LIGHT, OLDAGE BARN LIGHT and GOODYEAR ("Infringing Marks") to trade on the goodwill associated with Barn Light Electric to sell competing RLM light fixtures.

70203037;1

48.     By way of example, Defendants are purchasing keyword advertisements wherein they use the BARN LIGHT ELECTRIC marks.  This is depicted in Figure 5, below.



**FIGURE 5**

49.     Cocoweb likewise combines Infringing Marks to further confuse consumers regarding the source or origin of its products.  For example, as shown in Figure 6, it marks its light fixtures with BARN LIGHT GOODYEAR, thus combining multiple elements in whole or in part of Barn Light Electric's marks.

70203037;1



**FIGURE 6**

50.     Similarly, Defendants arrogated trademarks that are confusingly similar to those used by Barn Light Electric.  This includes Defendants' use in consumer catalogs of the marks GOODYEAR, which is confusingly similar to GOODRICH, and OLDAGE, which is confusingly similar in usage to Barn Light Electric's use of the ORIGINAL.  Such infringing uses are depicted in Cocoweb's product catalog.  *See* Exhibit 3, at 18-20.

51.     Defendants use the Infringing Marks in combination with the same types of goods and services provided by Barn Light Electric under the BARN LIGHT ELECTRIC marks.

52.     Cocoweb sells and ships products under the Infringing Marks to consumers nationwide, including consumers residing in this judicial district.

53.     Defendants, under the direction and control of Defendant Brey, promote and sell Cocoweb lighting fixtures using the Infringing Marks.

54.     At the time Defendants began using the Infringing Marks, Defendants knew of Barn Light Electric's exclusive rights to the BARN LIGHT ELECTRIC marks.

55.     Defendants selected the Infringing Marks with the intent of causing consumer confusion, and thereby enabling Defendants to profit from the goodwill Barn Light Electric had established in the BARN LIGHT ELECTRIC marks.

56.     Based on the foregoing, Defendants have traded on and damaged the goodwill associated with the BARN LIGHT ELECTRIC marks.

57.     The net effect of Defendants' willful trademark infringement and unfair competition is actual harm and potential future harm to consumers and Barn Light Electric.

## COUNT I

### (Trademark Infringement in Violation of 15 U.S.C. § 1114)

58.     Barn Light Electric incorporates by refence the allegations in paragraphs 1 through 57 as if fully set forth herein.

59.     Defendants' use of the Infringing Marks in connection with their on-line retail operation offering commercial and residential lighting, lamps, and

accessories to consumers in the United States infringes upon Barn Light Electric's superior rights in its BARN LIGHT ELECTRIC marks.

60.     Defendant Brey is knowingly and deliberately directing and controlling the infringing activities of Cocoweb.

61.     Defendants have knowingly and without the consent of Barn Light Electric used the Infringing Marks in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods, and such activities are likely to cause confusion or mistake, or to deceive consumers in the United States.

62.     Defendants selected the Infringing Marks and used them in connection with the sale of a substantially similar line of products as Barn Light Electric with the intent of driving benefit from Barn Light Electric's stellar reputation and goodwill in the BARN LIGHT ELECTRIC marks.

63.     Under the circumstances of this case, the infringing activities constitute intentional, willful infringement in violation of Barn Light Electric's rights under 15 U.S.C. § 1114, and have caused and will continue to cause Barn Light Electric irreparable harm if not enjoined.

64.     Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116(a) and the equitable powers of this Court, Defendants will persist in their activities, thereby causing Barn Light Electric additional irreparable harm.

65.     Barn Light Electric has sustained damages a result of the infringing activities in an amount to be ascertained at trial, but in no event less than $75,000.

66.     Upon information and belief, this case qualifies for a judgment of three times profits or damages, whichever amount is greater, together with attorney's fees pursuant to 15 U.S.C. § 1117(a).

## COUNT II

### (Federal Unfair Competition under 15 U.S.C. § 1125)

67.     Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 57 as if fully set forth herein.

68.     Defendants acts tend to represent falsely that the Defendants' products are legitimately connected with Barn Light Electric, tend to describe falsely that Defendants' products emanate from or are sponsored or approved by Barn Light Electric; and tend to designate falsely that Defendants' products originate from Barn Light Electric, all of which constitute violations of 15 U.S.C. § 1125(a).

69.     Upon information and belief, Defendants' acts of unfair competition were done willfully, intentionally, and in bad faith.

70.     Defendants' acts are greatly and irreparably damaging to Barn Light Electric and will continue to be greatly and irreparably damaging to Barn Light

Electric unless enjoined by this Court, as a result of which, Barn Light Electric is without an adequate remedy at law.

71.     Barn Light Electric has sustained damages as a result of the infringing activities in an amount to be ascertained at trial, but in no event less than $75,000.

72.     Upon information and belief, this case qualifies for a judgment of three times profits or damages, whichever amount is greater, together with attorney's fees pursuant to 15 U.S.C. § 1117(a).

<u>**COUNT III**</u>

**(Common Law of Unfair Competition)**

73.     Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 57 as if fully set forth herein.

74.     Defendants' acts constitute unfair competition in that:

a)      Said acts enable and will continue to enable Defendants to obtain the benefit of trade on the goodwill of Barn Light Electric;

b)      Said acts damage and will continue to damage Barn Light Electric's goodwill in that Barn Light Electric does not have control over the business and products of Defendants;

c)      Said acts have caused and are likely to continue to cause confusion, mistake, or deception of the public; and

d)      Said acts will result in the unjust enrichment of Defendants.

70203037;1

75.    Upon information and belief, Defendants' acts of unfair competition were done willfully, intentionally, and in bad faith.

76.    Defendants' acts are greatly and irreparably damaging to Barn Light Electric and will continue to be greatly and irreparably damaging to Barn Light Electric unless enjoined by this Court, as a result of which, Barn Light Electric is without an adequate remedy at law.

77.    Barn Light Electric has sustained damages as a result of the Defendants' activities in an amount to be ascertained at trial, but in no event less than $75,000.

## COUNT IV

### (Common Law Trademark Infringement)

78.    Barn Light Electric incorporates by reference the allegations in paragraphs 1 through 57 as if fully set forth herein.

79.    Barn Light Electric is the owner of the valid and protectable marks, BARN LIGHT ELECTRIC, HOME OF "THE ORIGINAL BARN LIGHT", BARN LIGHT ELECTRIC COMPANY, BARN LIGHT ELECTRIC CO., BARN LIGHT and GOODRICH.

80.    There is a likelihood of confusion caused by Defendants' use of the Infringing marks.

81.     Upon information and belief, Defendants' acts of infringement were done willfully, intentionally, and in bad faith.

82.     Defendants' acts are greatly and irreparably damaging to Barn Light Electric and will continue to be greatly and irreparably damaging to Barn Light Electric unless enjoined by this Court, as a result of which, Barn Light Electric is without an adequate remedy at law.

83.     Barn Light Electric has sustained damages as a result of the infringing activities in an amount to be ascertained at trial, but in no event less than $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Barn Light Electric prays for a Judgment for Damages, Cancellation of Defendants' marks, and permanent Injunctive Relief as follows:

A.      Permanent injunctive relief ordering that the Defendants', their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, who receive actual notice of the Order by personal service or otherwise, be preliminarily and permanently enjoined and restrained from:

i. Using BARN LIGHT ELECTRIC, BARN LIGHT, OLDAGE, GOODYEAR or any confusingly similar variation of the BARN LIGHT ELECTRIC marks;

70203037;1

ii. Publishing, producing, marketing, selling, transporting, distributing, moving and/or otherwise circulating any and all services or products, including, but not limited to commercial and residential light fixtures, lamps and accessories, home goods, and products or services related thereto, which bear the BARN LIGHT ELECTRIC, BARN LIGHT, OLDAGE, GOODYEAR mark or any confusingly similar variation of the BARN LIGHT ELECTRIC marks; and

iii. Acting in any manner which causes Defendants' products or services, including, but not limited to commercial and residential light fixtures, lamps and accessories, and Defendants' online advertising and selling of same, to be in any way confused with Barn Light Electric, Barn Light Electric's products or services, and the goodwill associated with the BARN LIGHT ELECTRIC marks.

B. Ordering that, in accordance with 15 U.S.C. § 1117, Defendants be required to account for and pay over to Barn Light Electric an amount equal to Defendants' actual damages, and all of the gains, profits, savings and advantages realized by Defendants as a result of Defendants' unfair competition, and if Defendants' actions are

deemed willful and intentional, then such amount should be increased to an amount not exceeding three times of such amount.

C.    An order reimbursing Barn Light Electric for the costs of this action.

D.    An order reimbursing Barn Light Electric for any and all reasonable attorney's fees incurred as a result of Defendants' unfair competition and infringement.

## <u>JURY DEMAND</u>

Plaintiff hereby demands trial by jury on all issues so triable as a matter of right.

Dated: June 22, 2023              Respectfully submitted,

By: */s/ Alejandro J. Fernandez*
Alejandro J. Fernandez, Trial Counsel
Board Certified in Intellectual Property Law
FL. Bar No.: 32221
E-mail: alejandro.fernandez@akerman.com
Neema Monfared
FL. Bar No. 1035991
E-mail: neema.monfared@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
Telephone No.: (813) 209-5055
Facsimile No.: (813) 218-5413